Chief Justice Bibb
delivered the Opinion of-the Court.
In May, 1816, an ejectment was instituted with double demise, one from the heirs of Edmund Byne, the other from Jacob Swope, against Raniel Dobyns, tenant in possession, and John Kercheval was admitted to defend. Edmund Byne’s patent was for 322 acres, under which the lessors of tjie plaintiff claimed; Overton’s patent of 1,000 acres, under which Kercheval claimed, conflicted with the greater part of Byne’s.
On the 26th August, 1816, Jacob Swope, (who held deeds from Grissum and wife, and Lumpkin wife, w;ho held by deed from Richard Byne, the patentee; but which deeds were not legally certified, but recorded upon insufficient authentications made an agreement with John Kercheval; which agreement was mutually signed and sealed.
It recites the ejectment as instituted by .Swope .&c. and that Kercheval was admitted a defendant, for the land where Dobyns then Jived; that Swope .claimed under Byn.e’s patent of S22 acres, all that part not conveyed to Benjamin Clift; which part, said.Swope agreed .to make a deed for, without responsibility for any adverse claim, nor to be bound to refund any purchase money; Swope to make no other title than he was possessed of, the said Kercheval being acquainted with the different conveyances from said Edmund Byne to said Swope. That in the said ejectment, against said Kercheval’s tenant, Kercheval was to withdraw his defence, and suffer *363 & judgment to be entered in favor of said Swope, whose title, was in said ejectment to be admitted to foe the legal title. The agreement then prooeeds in these words:
Judgment in ejectment according to the contract.
Assignment of Iterche-val’s bonds t« Clift.
Tender of' the money, and demand of deeds of conveyance.
*363 “And it is further agreed, on the part of said John Kercheval, that he will pay unto the said Jacob Swope, the just and full sum of six hundred dollars, in two annual instalments, and for which consideration, the said John Kercheval, hath this day executed his obligations unto said Jacob Swope, and further agrees that if the said money is not paid, that the said Jacob Swope shall have free and undisturbed possession of said premises, and if not obtained otherwise, may sue out a writ of possession, and take possession again, when there shall be no bar whatever. On the money being paid by the said John Kercheval, the said Jacob Swope agrees to convey the aforesaid land, agreeable as stated before. The said Kercheval producing a deed to said Swope to that effect. ”—“This agreement shall be filed among the papers, in the said ejectment with the clerk.”
On the same day, Kercheval executed two obligations to Swope, for three hundred dollars each, bearing interest from the date; the one payable on, or before the 15th November, 1817; the other, on or before the 15th November, 1818.
The day after the date, Kercheval paid to Swope seventy dollars, which Swope credited on the obligation first due.
At the ensuing term of the Mason circuit, Kercheval suffered a verdict to be taken, and judgment was rendered generally, on both demises, in favor of the plaintiff in ejectment; and the agreement was deposited with the clerk.
On the 18th October, 1817, both obligations given by Kerclieval for the price of the land, were assigned by Swope, to Benjamin Clift, without recourse or responsibility in law or equity..
On the 18th May, 1813, Kercheval tendered the money due and interest, to Swope, and demanded a *364 deed; Swope refused to receive the money, or make the deed.
Kwcheval’s bill for specific perform-ancc-
Sdre facias judgments in víved?ent
Allegations of «ve bill of ero veva .
Swope and swers!aD"
On the 27th May, 1819, Kercheval tendered the money and interest to Benjamin Clift, demanded his obligations and a deed for the land, Clift refused to receive the money, or to produce the obligations; but stated that Kercheval had forfeited the contract, and he wanted the land.
On the 14th June, 1819, Ketcheval instituted his suit in equity, for specific execution, making Byne’s heirs and others, Swope and Clift defendants.
On the 26th July, 1819, a scire facias on the judgment in ejectment was sued out, and was served on Kerch ival on same day, and judgment was rendered for execution on the 21st August, 1819.
Kerchival charges, that he communicated to Swope, the objections to deeds from Byne to his daughters, and from them and their husbands, to gWOpe, and that Swope promised to rectify them; that Swope sent the deeds to Georgia, when returned, they were not yet sufficiently authenticated, that the deficiencies were stated, and that Swope promised to rectify them, so as to get them so authenticated, as to pass the title of Byne to Swope; he charges, that Swope and Clift did not disclose to him the assignments to Clift, until the tender to Swope, in May, 1819.
Swope and Clift both state, they believe Kercheval jiaci notice of the assignments as early as November term of the Mason court, 1818; but there is no evidence on this subject, except bill and answer, Swope denies any promise, or apy consideration for a promise, to rectify the conveyances from jByne and his representatives to Swope; admits conversations between Kercheval and himself as to the defects; that he sent the deeds to Georgia, and when they returned, that Kercheval advised sending them back, to be proved in open court, and certified; that he had sent them hack; these conversations and efforts, however, he states, were before the contract, except the Iasi; and that his inducements to repeat his efforts thus, was not from any promise or obli *365 gation to Kercheval, who was bound to take his title as it was at the time of the contract; but because of the deeper interest Swope had in other lands claimed under the sanie deeds.
Amended bill 1
Tender of the N
Time is not ot the essence oi executory iand^to^jn”1' force’ the spe-cificexecu-ilon‘
*365 Swope lived in Stanford, Lincoln county; Clift and Kercheval in Mason, where the land in controversy lies.
No title has been conveyed by Swope to Kercheval, or to Clift; but Clift claims the land, by virtue of the assignment of the obligations; if any other claim exists, it is not disclosed, except that Clift says, that at the time of the assignment of the notes, he purchased all Swope’s interest, and placed himself in Swope’s place, “except with relation to the conveyance to be made, in the event of the payment of the money, agreeably to the terms of the contract.” No contract between Swope and Clift, except the assignment of the notes, appears.
By an amended bill, Kerchival prays, in case the contract cannot be decreed, that it be rescinded, and that he be permitted to make his defence to the ejectment. Swope by his answer objects to that.
Ciift, by his answer, filed at August term, 1819, states that he had tendered to complainant, the money received by Swope, with interest, and such tender is proved.
The circuit court refused to decree specific execution; but decreed the notes to be cancelled; and that Clift refund the money paid to Swope, with interest &c. and that the complainant pay the costs.
Kércheval’s,counsel insists, that inequity time is hot regarded as of the essence of the contract, and relies on circumstances of excuse, for his failure to pay the money precisely at the time it was stipulated, and upon part performance. The counsel for defendants has argued, that in this case, time was of the essence of the contract, and that the parties by their stipulations have made it so; that there is nothing to outweigh the express stipulations of the parties.
The rule has been often recognized in courts of equity, that time is not of the essence of a contract, *366 Many cases have been adjudged, wherein specific performance was decreed, notwithstanding the ven-c¡or or vendee, had failed to perforan his part, on the day stipulated.
In what cases a failure of tothecon^ tract, to perform at the day, may be and^thfTcon-tract enforc-ec!-
Cases whore time has been has notTjecn deemed material m the contract.
Lapse of time not to be dis-thourfTno ' time for performance was wifldéfault always be fatal, however materia] the .parties may attempt to make the time.
*366 A failure of vendor, or of purchaser to perform on the day appointed, does not, of itself, deprive him of his right to have specific execution at an after day, when he shall be able to comply with his part of the engagement. Where the court can direct compensation adequate to the breach in pojpt of thne, the object of the parties, may be frequently best effectuated by carrying the agreement into execution. If a bill be brought for specific performance, by a party who has been in default, the court ought to consider all the circumstances, and pronounce such decree as is best adapted to the circumstances.
Examples will be found in Gibson vs. Patterson, (1st Atk. 12;) Vernon vs. Stephens, (2 Pr. Wms. 66;) Langford vs. Pitt, (2 Pr. Wms. 629;) Stomtore vs. Meers, cited in the last case, (630;) and many others stated and referred to by Newland in his treatise on contracts, (from 230 to 241;) 1 Fonb. Eq. 227. And cases also will be found where time has been adjudged material, and specific execution refused, because the one party or the other, has been in default; or has shown backwardness, negligence of a gross character, or has trifled &c. or where the circumstances have in the interim, materially changed; examples of this kind may be found in Newland on contracts, chap. XII. p.241, to 250; Sugden Vend. chap. VIII. p. 244, to 259; Benedict vs. Lynch, 1 John. ch. ca. 370; Pratt vs. Carroll, (8 Cran. 471;) Brashear vs. Gratz, (6 Wheat. 528.).
The result of the cases seems to be, that courts of equity will not indulge either party, at any distance of time to come in, and ask specific performance, and say he is now ready, though he was not at the time stipulated in the contract, for carrying it into execution. But to say, because the plaintiff was not ready at the very time, when the contract by its terms ought to have been performed, he never can have a decree for an execution of the agree *367 ment, would contradict the whole current of authorities. Parties may, certainly, render time of greater importance by express stipulations as to time. But time alone, unconnected with other circumstances, growing out of the failure as to the stipulated performance, has not been acknowledged of itself a conclusive objection to a decree for an execution of ihe.agreement. In the case Vernon vs. Stephens, (2 Pr. Wms. 66,) the purchaser was in default in payment; a suit was brought for the residue of the price; before the cause was heard, the parties entered into an order by consent, signed by both parties, by which the purchaser agreed to pay the money by such a day, or in default, the original articles to be given up, and cancelled, the purchaser paid by the day, £1,000, but made default in payment of the residue. Another order was then entered into by consent, signed by both parties, by which a further day was given, when, if the money was not paid, the purchaser agreed to lose all the money he had before paid, and to lose the benefit of the articles which were to be put into the hands of counsel, and delivered over to the vendor in default of payment, and he in case of such default, to hold the premises discharged of the articles.. The purchaser made.a third default. And after brought his hill to have his purchase completed, on payment of the balance due, with interest, and to be relieved against those orders. Lord chancellor Hardwick decreed accordingly. He said, “if the defendant has his money and interest and costs, he will have no reason to complain of having suffered; on the contrary, it would be a very great hardship on the plaintiff, to lose all the money he has paid; lapse of time in payment, may be recompensed with .interest and costs. And as to these agreements, thev were all intended only as a security for payment of the money, which end is answered by the payment of principal, interest and costs.” The chancellor alluded also, to the scarcity of money in 1720, when it ought to have been paid, those in whose hands money then was locking it up; and to the death of the vendor, and some delay in taking out letters of administration; so that the payment of the money at the exact time was dispensed with.
Default wher'e not material, but to be com-pensa tod.
tifieot of part execution of the contract.
Part execution of the contract, and other circumstances of the case, held sufficient to excuse the default m the punctual performance, and entitle the party to the execution of the contract.
The rule is acknowledged to be (in the case of Brashear vs. Gratz, 6 Wheat. 533,) by the supreme court of the United States, “that there can be no doubt, that a failure on the part of a purchaser or vendor to perform his contract on the stipulated day, does not of itself deprive him of his right to demand a specific performance at a subsequent clay, when he shall be able to comply with his part of the engagements. It may be in the power of the court to direct compensation for the breach of contract in point of time, and in such case, the object of the parties is effectuated by carrying it into execution.”
In that case, the specific execution was not decreed however, because of the change, in the circumstances of the parties; in the value of the property; of the great delay between 1807, and 1813; and the failure of Brashear to pay his bills, after protests, and repeated offers to convey if he would make payment, with other circumstances of hardship on Gratz, which rendered compensation for time impracticable; no part having been performed by Brashear.
A consideration always entitled to great weight, is, “that the contract, though not. fully executed, has bepn in part performed.”
To apply the undoubted principles of equity to the circumstances of the casé under consideration; Kercheval has performed part of the engagement, by him stipulated. He executed his obligations on the day of the contract; he paid part of the money on the next clay; it was accepted and credited; he performed another part by withholding his defence, and suffering.judgment in ejectment to go. By this part performance, he would, without the aid of a decree for specific performance, be placed under great grievance, and sustain irreparable damage, if the court were to proceed upon the ground assumed by the counsel for the defendants. He must lose his improvements; his defence • against Swope’s and Byne’s claim is gone; his adversary claim, under Overton’s patent, is merged in the agreement, and he must submit to be turned out by the writ *369 ©f possession, and “there shall be no bar whatever.” It is evident from the agreement that it was a compromise of conflicting claims; that the stipulation as to the writ of possession without bar, in case of default in payment, was intended only as a security for the payment of the money. This view of the intent of the parties, is confirmed by the conduct of Swope. In October, 1817, before either note fell due, Swope assigned these notes to Clift, receiving from Clift, onjy the balance of principal and interest then due, after deducting the credit endorsed. So says swope, in his answer of the 33d July, 1819; and Clift, jn his answer, of the 36th of August, 1819, refers to Swope’s answer, and acknowledges himself as standing in Swope’s place, except as to making the deed; he does not gainsay Swope’s statement. Swope then assigned these notes, as documents for money; he did not convey the land to Clift; Swope had no longer any right to the money; and Clift had no interest in the land, other than as security for the payment of the notes assigned to him by Swope. Ciift will be recompensed by the balance and interest. The law has fixed the interest, as a legal and adequate compensation for forbearance or delay in payment of money. This is all that Clift has a legal claim to, by the assignments of Kcrcheval’s notes; it is all he has an equitable claim for. It would be iniquitous, to suffer Clift to take the land and Kercheval’s improvements for the balance, due upon the notes executed in consideration of the compromise. It is evident, that by taking the assignment of Kercheval’s notes, Clift came under no legal engagement to refund to Kercheval, the money paid by him to .Swope, and credited on the notes. His offer to do so after bill filed, was a voluntary proffer of a new bargain; and was a paltry attempt to acquire a new attitude, not arising out of his assignment's from Swope; an effort to acquire great gain, for the advance of his money, to the great loss of Kercheval. Swope resists the prayer to rescind the contract. Swope is not willing to return to the state in which lie was before the agreement. He wants to retain the money. Clift is not content to take the money, ac *370 cording to the legal effect of Swope’s assignment, but is catching at inordinate gain, by claiming a forfeiture from Kercheval, instead, of the notes for money and the security for payment of them.
An ad van- . tage denied a party who was lying in wait for it.
Construction of the trans•action.
As to the other circumstances relied on by Kercheval in excuse for failing to pay at the day: fie had communications with Swope as to amending the authentications of the deeds. Swope does not admit any promise, upon any consideration or obligation on his part, to procure the amendments; but acknowledges the communications, and that his attempts were induced by his interests in other lands, held by the same deeds. The conversation however, particularly acknowledged to have taken place after the contract of 1816, was not accompanied by any communication to Kercheval, of an indisposition to comply; but the contrary, and was calculated to lull Kercheval. Neither Swope nor Clift .communicated to Kercheval, information ef the assignments of his notes until after both fell due; although they were made in October, 1817; notice .is not alleged to have been given to Kercheval, earlier than November term of the Mason circuit court, 1818; there is no evidence that Kercheval had notice until after his tender to Swope, in Máy, IS19; and in nine days thereafter, he tendered the money do Clift. As Clift and Kercheval lived, in the same .county, the failure to give notice of the assignment of the notes, until after both days of payment were past, shows that Clift has suffered no material damage, beyond what can be compensated by interest; but it also shows a lying in wait for an unfair advantage.
There is nothing in the contract like a stipulation that the purchase should be forfeited for default of payment to the exact day. On. the contrary, the circumstances of the compromise, of part performance, the assignment of the notes, and the wording .of. the agreement, negative the idea that any thing more than a security for payment of the notes was intended. The stipulation for the issuing of the writ of possession is made; none, however, that the purchase shall be vacated; Kercheval is bound to pay, the taking of possession is not to discharge *371 Kercheval, nor extinguish his notes for the mo.ney; he is held bound. The succeeding sentence stipulates — “on the money being paid by the said Kercheval, the said Jacob Swope agrees to convey” &c.
Equity will ra¡iaJte a~ a!(. lesandhard-ships,
Statement in„, the oontracb chaser knew defendants • deduction of"' conclusive against his ob-jeotionsto his decíl5-'
Parties,
Tender of the money not allowed, undei the circumstances, to stop the into rest.
*371 It would seem from this part of the agreement, that the payment of the money, after Swope should enter for default of payment, was contemplated; and that Swope’s entry and holding the land-and. improvements, was introduced as a security and incen-live to payment by Kercheval, but was not intended to vacate the agreement. And if it had been; count of equity ought to relieve against a hardship and penalty, so grievous to the one party, whilst-the other party, Swope, had received part performance, and held the notes for the money, not vacated nor released, nor extinguished by- such-entry upon the land.
Were it not for the stipulation, so positively expressing that Kercheval was acquainted with the different conveyances from Edmund Byne down to Swope, and- that- Kercheval was to accept, such title as Swope was then possessed of, there would be strong reasons for rescinding the contract. But as Kercheval has so- stipulated, he must accept it notwithstanding it is not seen whether the efforts 0f Swope, as stated in his answer, did obviate the ob-jec-tions to the title. The inference must be, that the risque of such a defective title, lessened the price which Kercheval agreed to pay.
He has endeavored to protect himself against'the defects by making the heirs of Byne, the heirs of Grissum and wife, and Lumpkin and wife,-parties.
This branch of the case is not in a- situation for hearing; Uriah Grissum has not been served with process; and there are doubts whether the bill states sufficient ground for a- decree against them; but this branch of the case need not postpone the decree as between the complainant and Swope and Clift.
As Swope and Clift refused to receive the money when tendered, they must pay the costs of applying *372 lo a court of equity. But under the circumstance's, this court is of opinion that the tender ought not to stop the interest.
Decree and mandate.
Barry and Bepeiv, for plaintiff; Brown and Reid) .for defendants.
It seems to this court, that the complainant was entitled to have specific performance of the agreement with Swope, and that the decree of the circuit court is erroneous in not so ordering. That as to the defendants, other than Swope and Clift, the cause is not ripe for hearing; but that the cause as between the complainant and the defendants, Swope and Clift, is no way to be affected by the decree as to the other defendants, and therefore, not to he postponed. It is, therefore, ordered and decreed, that the said decree Of the circuit court he reversed; that the cause be remanded with directions, to take such orders and decrees as between the complainant and defendants, Swope and Clift, as are proper for a specific execution of the agreement between said Kercheval and said Swope; by ordering the payment of the balance of principal and interest due upon the notes of Kercheval, from their date up to the time of payment to be made; and when made; by ordering a conveyance by Swope of the land specified in the agreement; and to do such other things as the principles and usages of equity may authorize and require, in conformity to the opinion foregoing.
And as to the other defendants, that the cause may be retained, with leave to amend the bill, and serve the process on such parties as have not heretofore been served, provided the complainant shall think proper to proceed.
And it is further ordered and decreed, that the defendants, Clift and Swope, pay to the plaintiff his costs in this behalf expended.