## EWINS & a. *v.* GORDON.

On any writing in the nature of an agreement under seal, covenant will lie.

Thus, on a bond, it is supportable, for it proves an agreement; and equity will enforce the specific performance of a covenant, for the breach of which the law can only give damages.

Where a decree for specific performance is asked, there must be a valuable consideration to support the equity ; but it is not essential that the consideration be expressed in writing.

A. gave his bond in the penal sum of $1,200, with the condition that it should be void, if, upon payment by B. of $600, within a year, A. should convey

certain lands to B. *Held*, that A. had not the option to convey the land or pay the prescribed penalty. The penalty is regarded as security for the performance of the agreement to convey, which equity will specifically enforce.

The contract or agreement sought to be enforced, must be mutual and the tie reciprocal, or a court of equity will not enforce a performance.

A bond to convey land upon payment of the stipulated price, is evidence of a mutual agreement of the obligee to purchase and of the obligor to sell. The agreement of the one party is a consideration for that of the other. And it is immaterial that the obligation of the one party, is secured by bond, and that of the other not thus secured; nor is it material that when the cause comes on for hearing, the vendee's part of the agreement has not been performed, if its fulfillment is tendered, and can be secured by the same decree which compels specific performance by the vendor.

The contract in this case, being in writing, is not within the statute of frauds; but—*Semble*, that if, under a parol agreement to convey to a party already in possession, under a lease, the party continues to occupy the premises after the expiration of the lease, making valuable improvements thereon, without notice, objection or warning from the owner and without payment or demand of rent, the statute does not apply and the court will decree specific performance if the vendor fraudulently witholds a conveyance.

In equity, time is not of the essence of a contract to convey lands, unless made so by direct stipulation or necessary implication. The cases of direct stipulation are when the parties introduce a clause expressly stating that time is to be of the essence of the contract. The implication is derived from the circumstances of the case; such as, where the property is required for some immediate purpose, such as trade or manufacture.

If it be conscientious that the agreement should be performed, though the action may be lost at law by the default of the very party seeking specific performance, it will, notwithstanding, be decreed, provided there has been no change of circumstances affecting the character or justice of the contract, and that compensation for the delay can be given; and that the party seeking specific performance is in a condition to perform his own part of the contract, and has shown himself ready, desirous, prompt and eager to perform it.

*Semble*: that the time of performance fixed by an agreement under seal, may be subsequently extended by parol; and that such extension may be inferred from the acts of the parties.

In favor of the assignee of a contract to convey land, equity will decree specific performance, regardless of that privity of contract between the parties indispensable to a suit at law; and a subsequent parol extension of the time of payment for the land by the original purchaser applies to the assignee. succeeding to all his assignor's rights and equities under the original agreement.

Where a party's right to a conveyance depends upon a tender of the purchase

money, such tender need not be averred in the bill to compel a conveyance, provided the fact of tender is shown by the evidence and made in the bill, and the money brought into court.

Assignor and assignee of a contract for conveyance of land to the assignor, may join in a bill to compel specific performance.

In Equity. The bill, by John C. Ewins and Daniel N. Russ against Earl C. Gordon, was filed June 26, 1868. It alleges that on the 21st day of May 1866, the defendant executed and delivered to the plaintiff, Russ, an agreement in writing, under seal, attested by two witnesses and acknowledged, whereby he covenanted that, upon the payment by said Russ, of $600 and interest, within one year, he would convey to him the premises described in said writing, by a sufficient deed of warranty.

That it was then agreed that from that time, Russ should have possession of the premises, paying all taxes that might be assessed thereon and keeping the buildings insured to the defendant.

That thereupon Russ entered into possession, and, with the knowledge, assent and encouragement of the defendant, expended about $800, in " repairing, fitting up and finishing the buildings on said premises into a dwelling house, and in grading and fencing said land."

That after making these expenditures, Russ continued in possession, occupying the premises by his tenants, until he sold his " interest in the land and in said writing obligatory and the covenants and agreements therein contained " to the plaintiff Ewins, for $800, which the latter paid, Nov. 11th 1867, and conveyed the same by an assignment thereof in writing; and that said Ewins has ever since that time occupied the premises, by his tenants.

The bill further states that on the 8th of November, 1867, the defendant informed the plaintiff, Russ, that he was indebted to a Miss Saunders, but, business being dull, she was not pressing him for payment, and he would therefore let the money due on said writing lie until she called upon him to pay her; but, as he was then paying Miss Saunders seven per cent. interest, he would have to charge Russ the same. To this arrangement Russ assented, and it was then agreed between Gordon and Russ that the time for compliance with the conditions of said writing should be extended, according to the terms of this latter agreement.

The bill alleges that Miss Saunders has never called upon the defendant for the money, that he has given no notice to either of the plaintiffs to that effect, and that the defendant has not in fact paid his indebtedness to Miss Saunders, nor to any person for her use.

The defendants's answer admits his seisin of the premises, and says that on the 21st of May, 1866, he executed and delivered to Russ his bond, in the penal sum of $1200, with condition that the same should be void, if, upon the payment, by Russ, of $600, within one year, the defendant should convey the premises to said Russ and his heirs by warranty deed duly executed, " the premises being then in as good condition as they now are, necessary decay excepted, said

Russ to pay all taxes that may be assessed on the estate and keep the buildings insured to said Gordon;" which bond the defendant understands to be the writing obligatory spoken of by the plaintiffs.

The answer denies that there was ever any agreement between Russ and the defendant, either in writing or by parol, that the former should have the use and occupation of the premises, as alleged in the bill.

The answer alleges that Russ had been in possession of the premises from January 1, 1863 up to the date of the execution of the bond, as the defendant's tenant, paying him rent therefor, and that Russ, after the execution of the bond, continued in possession, without any new agreement in reference to the occupation of the same; and denies that said Russ made any repairs upon the buildings or expended any money upon the premises with the defendant's knowledge, assent or encouragement; but says that, without his assent or encouragement, and wholly for his own accommodation and convenience, said Russ has expended, as the defendant is informed, in repairs, fencing, grading, &c., a sum not exceeding $350; and he also says that, without the defendant's consent, said Russ removed from the premises and converted to his own use a building worth at least $350, and that he has never paid the defendant for the same. He admits that Russ " continued to occupy the premises, by his tenants, down to November 11, 1867."

The defendant denies all knowledge of the alleged sale and assignment from Russ to Ewins.

He also says that he never directly or indirectly, agreed to extend the time for compliance with the conditions of the bond. He denies that he ever had any such conversation as is alleged in the bill, concerning Miss Saunders and his indebtedness to her, and " claims and maintains that the time for performing the condition of said bond could not be altered or extended, otherwise than by an instrument in writing, by him signed and sealed."

The bill alleges that the defendant and the plaintiff Ewins had for many years been near neighbors and intimate friends, having many business transactions together, and that Ewins, reposing confidence in the honesty of the defendant and then, and for some time afterwards, believing that the defendant would not try to wrong him, did not immediately notify him of the assignment from Russ.

The defendant, in his answer, admitting that he has been for many years a neighbor to Ewins, that they have had some business transactions together and have always been on friendly terms, says that Ewins never, prior to the filing of the bill, informed him of the assignment.

The bill alleges, and the answer admits, that the defendant early in May, 1868, without notice to either of the plaintiffs, requested the tenants upon the premises to pay rent to him, and that upon their refusal to do so, he gave them notice to quit, under the landlord and tenant act.

Learning this, the plaintiffs say, by their bill, Ewins set himself to

work to raise money to pay the defendant the amount due under the agreement with Russ for a conveyance, together with such damages as the defendant might have sustained by delay of payment, and on the 29th of May, 1868, tendered the defendant $700, " $25, of which was in small pieces, to wit, in five dollars, two dollars and one dollar pieces," for the defendant to take his pay therefrom for the amount due under the writing obligatory and for his damages; (of which sum he also makes prefert in court;) and that, at the same time, he presented him, for his signature and execution, a warranty deed of the premises, in proper form and duly stamped, but the defendant refused to take the money or to execute the deed.

The defendant, by his answer, denies the tender or offer of any money or the presentation to him of any deed for his signature or execution, and insists that he was never under any obligation to execute a deed of the premises to Ewins or to anybody else.

The bill alleges that the defendant, fraudulently contriving and intending to injure the plaintiffs, sued out two justice's writs, one against N. R. Bodwell, a tenant of Ewins, occupying the premises, and another against the plaintiff Russ, both under the landlord and tenant act, which were returned before Wm. H. Hills, a justice of the peace at his office in Plaistow, June 23, 1868, that Mr. Bartlett of Derry was employed as counsel to appear for the defendants, but by accident, missed his way, and for that reason did not arrive at the justice's office till sixteen minutes past ten o'clock (the writs being returnable at nine o'clock,) and about ten minutes after, it was said, the cases had been called and defaulted; but that he arrived there at the same time with Wm. M. Rogers, the defendant's counsel; that the defendant and the justice were then looking around the justice's grounds and premises; that the justice, upon seeing Bartlett and Rogers, returned to his office, the defendant remaining outside until Bartlett went away; that Bartlett, being informed that the cases were defaulted, then, in the presence of Rogers, moved that the defaults be stricken off and the cases set down for trial; that Rogers objected, and the justice decided that he had no authority to strike off the defaults, although the defendant's counsel was present, and the defendant himself was near by and in communication with his counsel; that Bodwell, the defendant in one of the justice suits was present at the justice's office two several times between nine and ten o'clock, and inquired of Gordon if the counsel had arrived so as to go on with the trial, and was each time informed by Gordon that they had not; that the last time of making this inquiry by Bodwell was about three minutes before Gordon and the justice stepped into the grounds to view the justice's premises; that thereupon Bodwell stepped into the street to see Bartlett when he should arrive; that Gordon knew that Bodwell was there for the purpose of defending the suit against him and that he was waiting till such time as Gordon should be ready to proceed; but that Gordon, fraudulently and without notice to Bodwell, caused the cases to be called and defaulted.

That the writ against Bodwell appears to have been made out in a blank originally used for another suit, after erasing what related to the action for which the blank had been originally used.

That Russ had not been in possession of the premises for months prior to the date of Gordon's suit against him, and that this fact was well known to Gordon.

The defendant's answer admits the commencement by him of the suits against Bodwell and against Russ, to recover possession of the premises, and, denying the fraud alleged, says he proceeded in the matter honestly and lawfully.

He denies any knowledge of Bartlett's employment as counsel and of his missing his way; and says that he, the defendant, was present at the justice's office at the time appointed, and, neither the said Bodwell nor Russ, nor the counsel for either, appearing, " after the expiration of the hour at which the writs were returnable, the defendants therein were severally defaulted and judgment was rendered by said justice against each of them, in favor of said defendant, for the possession of said premises, as lawfully might be."

He admits that he afterwards walked about the justice's grounds with the justice, and that, while so engaged, Bartlett arrived, and Bartlett and the justice then went into the office together. He says that he did not go into the office till after Bartlett had left, and therefore does not know what conversations or motions were made there, nor what course was taken by the justice;" and has not been informed otherwise than by the plaintiffs' bill;" and he therefore denies the plaintiffs' allegation in this particular and in all other matters not specifically admitted or denied.

And he says that the plaintiffs' remedy for their pretended injuries is complete at law, and that a court of equity has no jurisdiction of the cause.

The bill prays for an injunction against the defendant from purchasing out writs of possesssion against Bodwell or Russ, and against the defendant's commencing any other suits against the plaintiff Ewins, or any of his tenants, for possession of the premises, during the pendency of this cause; also that the defendant be required to convey the premises to one or the other of the plaintiffs, as the court may direct, and for general relief.

*G. C. Bartlett*, for the plaintiffs.

The matter of the specific performance of contracts is peculiarly within the province of this court, sitting as a court of equity.

A specific performance of a parol contract for the sale of land, may be decreed in equity, unless the party insists upon the benefit of the statute of frauds, (i. e.) if the statute of frauds is not set up as a bar to the enforcement, either by the answer or by plea. *Newton* v. *Swazey*, 8 N. H. 9; *Tilton* v. *Tilton*, 9 N. H. 385; *Kidder* v. *Barr*, 35 N. H. 235.

Part performance of a parol contract will take it out of the stat-

ute. If the vendee, with the assent of the vendor, enters into the land and makes improvements it will constitute such part performance. *Newton* v. *Swazey*, 8 N. H. 9.

Possession by the vendor, having unequivocal reference to the contract, has always been considered an act of part performance. *Ayer* v. *Hawkes*, 9 N. H. 154, and cases cited; *Kidder* v. *Barr*, 35 N. H. 235.

Was time of the essence of the contract? There is no pretence but that Salem is a country place, and there is no evidence that the value of the land therein is subject to fluctuation, or had in fact changed between the date of the agreement and May 29, 1868, when the tender was made, except the betterments on the land in controversy made by the vendee subsequent to said agreement.

It is not sufficient that the parties should name the time of performance in said contract    *    *    *    but it must appear that they really intended to make such time an essential element of the agreement.

A court of equity is to examine the contract, not merely as a court of law does, to ascertain what the parties have in terms expressed to be their contract, but what is in truth the real intention of the parties, and to carry that into effect: See *Barnard* v. *Lee*, 97 Mass. 94, and cases cited.

There would have been no occasion to have had the wife of the defendant sign the paper, to have the same attested by two witnesses and acknowledged before a magistrate, nor to have had the interest on the $600, payable yearly, if such time had been actually regarded by the parties as an essential element of their agreement.

The conduct of the parties in regard to this matter, from May 21, 1866 to May, 1868, tends to negative the idea that time was an essential element of the agreement.

Russ paid $600, one-half of the purchase money, to Gordon, the defendant, and with his knowledge, consent, and encouragement, entered into said premises, made valuable improvements thereon and expended on the house and in fencing and grading the land, at least $550 in addition to the $600 paid Gordon, in cash.

Russ conducted himself as the owner of said premises, changed the building from a shoemaker's shop to a dwelling-house, built ells to the same and a chimney, fenced the land, and painted, papered and finished off the building into a dwelling-house for two families. And further, he erected and placed other buildings on said land, which he sold and which were removed from said land without any objection from said defendant, who lives in the immediate neighborhood thereof and within view of the premises, and who was present and saw these changes going on, and suffered and encouraged Russ to expend time and money on the land and buildings, and to conduct himself as the owner of the premises from May 21, 1866 to November 11, 1867, when he assigned said writing to Ewins. And Gordon never intimated to Russ that he should rely upon the time named in the writing.

The defendant has never called for any rent of said premises, for the use and occupation thereof, or for any pay for damages by reason of placing buildings thereon or for removing the same therefrom.

The whole conduct and conversation of both Russ and the defendant from the commencement of negotiations for the sale of said land down to April, 1868, tends to show that time was not regarded by either party as of the essence of the contract.

Gordon has so conducted in this matter under the contract that he could not rescind the same without notice to the other parties and giving them a reasonable time in which they could pay him the balance due.   This has not been done.   He never gave any notice to Russ before the assignment of the writing, November 11, 1867, or to Ewins subsequently, or at any time, that he intended to take possession of said premises or that he declined to make a conveyance thereof, prior to May 29, 1868.

And said defendant never entered upon said premises for the purpose of taking possession thereof until after May 29, 1868.

Now would any person of such a disposition, knowing that time was of the essence of the contract, have permitted Russ to enter into the possession of said premises, remain and conduct himself in the manner indicated by the testimony in this case, without informing him or any person claiming under him " that the time was up " and "they must leave ?"

We think not ; and that the parties, by their words and acts having indicated that they did not regard time as material or of the essence of the contract, this court will be pleased to so construe it as it will be doing substantial justice between all parties.

But if time was of the essence of the contract, could it be subsequently extended by parol?   On this point see *McMurphy* v. *Garland*, 47 N. H. 322, and cases cited.

The party *to whom* the condition is to be performed may also waive the forfeiture, in which case the condition is saved : See Greenl. Cruise. Dig. Tit. 13, c. 2, § 25, n. 1, and cases cited.

The tender by Ewins to Gordon, was made May 29, 1868, for him to take his pay for $600 due, with interest, damages and costs thereon, which defendant acknowledged.   The tender was more than sufficient to pay the whole of said charges.

*Christie* and *J. G. Hall*, for the defendant.

The contract sought to be enforced is alleged to be in writing, and, of course, any and all evidence of parol contracts that may have been taken in the case is irrelevant, immaterial and inadmissible, and must be rejected and wholly disregarded by the court in the hearing and consideration of the case.   We make this suggestion to put the court on their guard, because much such evidence has been taken in the case on the part of the plaintiffs.

A contract in writing, such as is set forth in the bill, must be by

the plaintiffs produced and proved and shown to have been made and entered into by the defendant with said Russ. Aware of this, and to make out the existence of the alleged written contract of the defendant, the plaintiffs offer in evidence the paper writing or penal bond with condition thereto subjoined, which is annexed to the deposition of said Russ taken in the case, purporting to be signed by the defendant, as being the writing mentioned and set forth in their said bill.

*First*, If this is the written contract intended and referred to in the bill, we object that it is not sufficiently and properly described and set forth in the bill, and is not admissable thereunder. It certainly is not, in terms, an agreement in writing made by the defendant with said Russ to convey the land in question to him said Russ; and we contend and submit that it is not in law or effect such, in any proper sense or fair interpretation. It is but a penal bond made by the defendant to said Russ for the payment of $1200 by the defendant to said Russ on demand, with a condition of defeasance in the defendant's favor thereto subjoined, of which he may avail himself or not, at his own election. It is at his option which to do, forfeit the condition and pay the bond, or convey the land on performance of the conditions precedent on the part of said Russ to be performed. There certainly is not in this bond or condition, or in both together contained, any contract or agreement of the defendant to convey said land to said Russ. No consideration for this alleged agreement is in the plaintiffs' bill stated or shown.

A court of equity will not enforce a contract that is not shown to be founded on a valuable consideration. Adams' Equity 78 * and the cases there cited in note 1.

*Second*, Whatever the contract in this bond and condition may be held to be, as to the defendant, it clearly, in no way or manner binds said Russ to do or not to do anything. He was at perfect liberty to pay the $600 or not as he chose. The defendant had no means of holding him or constraining him to do or not to do anything whatever. The contract was, therefore, not mutual, nor was the tie reciprocal.

But the contract or agreement sought to be enforced must be mutual and the tie reciprocal, or a court of equity will not enforce performance. *McMurtin* v. *Bennett*, Harring. Ch. 124; *Hawley* v. *Sheldon*, Id. 420; *Hutchinson* v. *McNutt*, 1 Ham. 14; *Cubeen* v. *Gordon*, 1 Hill's Chancery 51; *Benedict* v. *Lynch*, 1 Johns. C. R. 370; *Ohio* v. *Baum*, 6 Hammond 383; *Pickering* v. *Pickering*, 38 N. H. 406.

*Third*, But if the court should be of opinion that said bond and condition amount to, or contain a contract in writing by said Gordon to convey to said Russ the land in question on performance by Russ of the conditions precedent on his part to be performed; that it appears by the allegations in said bill to have been made upon sufficient consideration, and that the said contract is mutually binding and the tie reciprocal, then we say that the conditions precedent

on the part of said Russ to be performed as provided in and by said condition of said bond, none or either have ever been performed, though they were to be, and must have been, performed within the time in the condition of said bond, by the parties *expressly limited and fixed* for their performance, else no suit either at law or in equity can be maintained thereon. It is not even alleged that this was done. We conceive and insist that the time fixed and specially fixed and limited by the parties, within which the said sum of $600, and interest was to be paid to the defendant, was under the contract and the circumstances of this case, of the essence of the contract, especially when the great fluctuation for the last six years, in the value of real estate and of the national currency both are considered, and also the fact that the defendant refused to take a mortgage for the said $600, which would not have bound Russ to prompt performance.

It is said and held in *Goldsmith* v. *Guild*, 10 Allen 239, that the docrine that time is not of the essence of a contract in equity should not be applied, as a general rule, to a sale of land in this country; and indeed the plaintiffs, seeming to feel and concede this, have in their bill alleged and in the proof attempted to show an extension by parol.

No reason or excuse is alleged or attempted to be shown for the neglect of the said Russ to pay within the time limited, nor for the long delay afterwards, before anything is pretended to have been said on the subject. The plaintiffs do not come *recenti facto* to offer and ask performance, nor have they, or either of them, shown themselves ready, desirous, prompt and eager to perform on their part. 2 Story's Eq. sec. 776 ; *Kepwell* v. *Knight*, 1 Young & Collier, 415.

The authorities on this subject are very numerous, and we do not propose to cite, classify or review them. But we submit and contend that the doctrine in this country, at least, is that where the time is fixed and limited by the parties, as it is in this case, it is of the essence of the contract, and must be heeded and must control unless overruled by strong facts and circumstances.

*Fourth,* The plaintiffs allege in their bill and attempt to prove that the defendant, some six months after the time limited in the contract for the payment of the $600, agreed, by parol, to extend the time for this payment until a Miss Saunders, to whom the defendant was indebted, should call on him to pay her claim, on condition that he, Russ, would and should pay the defendant seven per cent. interest on said $600, until Miss Saunders should call for her money. As to this we say, first, that it is most positively and distinctly denied by the defendant, and we think is not made out in evidence by the plaintiffs with such clearness and assurance as can authorize the court to disregard the stipulation as to time in the written contract and base their action in the case on this alleged extension of time.

This alleged agreement, if made as claimed, was in violation of the usury laws, and, therefore, will not be enforced, especially as there was no consideration for it. Again, we claim and insist that the contract being under seal could not be altered or modified, but by an instrument under seal and signed by the defendant.

As to the allegation and proof that the plaintiffs or one of them, have been in the possession of the land in question ever since the execution of said bond, and that the said Russ made expenditures thereon, with the knowledge and consent of the defendant. We say and the proof is that Russ at the time of the execution of said writing obligatory and for more than three years before had been in the possession and occupation of said land and buildings under the defendant and as his tenant, and that all his expenditures thereon were made within the year from the date of said bond, and when the defendant had a right to expect that the said Russ would pay the $600 within the year limited ; and it further appears in evidence that the buildings belonging to the defendant, and removed from said land by said Russ and the rent of the premises since that time, received by the plaintiffs, more than equal the expenditures of said Russ on said premises. That said Russ thus remaining and continuing in possession can afford the plaintiffs no aid : See *Hatcher* v. *Hatcher*, 1 McMullan Ch. 311 ; *Johnson* v. *Glancy*, 4 Blackf. 94 ; *Christy* v. *Burnhart*, 14 Penn. St. 260 ; *Ham* v. *Goodrich*, 33 N. H. 32.

*Fifth,* The plaintiffs allege in their bill that the said Russ on the 11th day of September 1867, executed an assignment of said writing obligatory, together with all his, the said Russ' interest in the covenants and agreements therein contained, to said Ewins, who has ever since been in the possession of said premises by his tenants.

They do not state *how* the assignment was made, whether it was by writing under the hand and seal of the said Russ or by a mere writing without seal. It is not enough that they shew in proof how it was. Nothing more than is alleged can be heeded even if proved. Again, the bond and condition are not assignable, but are both to pay or convey to Russ and no one else. The defendant might be willing to pay or convey to Russ, but not to Ewins or any one else. He never contracted to convey to any one other than Russ.

Again, this assignment to Ewins does not purport to be, and is not to be regarded as an assignment of any thing but the writing obligatory and all Russ' interest in the covenants and agreements therein contained. It therefore does assign nor is it alleged to have assigned to said Ewins any parol or verbal agreement of the defendant, altering or modifying said writing obligatory, or the condition thereof. And therefore, even if an agreement for the extension of the time for the payment of the $600, had been made with Russ, Ewins can not in his own name or otherwise avail himself of it. It has not been assigned to him, or agreed to be, and he has no interest in it and cannot enforce it. He has nothing but the writing obligatory and the interest of Russ therein, and the covenant and agreements therein contained.

Again, it is not alleged in the bill that either Russ or Ewins, before the commencement of this suit, ever in any way notified or informed the defendant of the said alleged assignment of said writing obligatory. Ewins and his clerk both swear that he called on the defendant in his own name and behalf, and so made his tender (such as it was)

and demanded a deed to himself, but exhibited no bond or assignment.

*Sixth*, The tender as alleged in the bill and as proved was insufficient and bad as a tender. No definite sum was tendered or offered to the defendant for him to take and keep, but $700 was presented, and he requested to take therefrom what was due him &c. This we insist is no tender of any thing or sum. To make a good tender, the sum tendered must be stated, and tendered without any qualification. The party tendering must decide the amount he tenders or intends to tender. It is not in said bill alleged that he the said Ewins has always since the said alleged tender been ready and willing to pay the same.

*Seventh*, If the money was demanded in the fall of 1867, as the defendant swears it was, or even in April, 1868, as it is admitted it was, the alleged tender was not in season.

*Eighth*, Upon the allegations of the bill, these parties should not be joined, and cannot jointly maintain this suit. We therefore move that the case be dismissed.

FOSTER, J. The testimony in this case is conflicting, and the views expressed by the parties with regard io their mutual relations and understandings, quite irreconcilable. It is to be hoped that this conflict has arisen rather from an honest misunderstanding them from intentional fraud or misrepresentation; but, however this may be, the evidence, as we regard it, so strongly preponderates upon the side of the plaintiffs, that, in all particulars essential to a decision of the cause, we consider the allegations of the bill fully sustained by the proof. It remains to be seen, then, whether upon the plaintiffs' own showing they are entitled to the relief which they seek.

The instrument upon which the plaintiffs found their right to ask for a specific performance of the defendant's covenant, is not, in terms, a contract or agreement, but it is in form, a bond, such as the defendant describes in his answer, to which the signature of the defendant's wife is appended, and the formal acknowledgement required in deeds of conveyance of real estate.

For all practical purposes however, the bond may be regarded as an agreement in writing, as set forth in the plaintiffs' bill; for, although as a rule, a covenant cannot be created except by deed, yet it is equally true, that on any writing in the nature of an agreement under hand and seal, an action of covenant will lie; and that on a bond, such action may be sustained; for the bond is evidence of an agreement, and courts of equity will not look to the form but to the substance of the contract. Platt on Covenants *5; *Newton* v. *Swasey*, 8 N. H. 12; *Chilliner* v. *Chilliner*, 2 Ves. Sen. 528.

And whether the deed be an indenture or a deed-poll is immaterial. Rol. Ab. 517; Bac. Ab. 529, Covenant A.

The imperfect compensation afforded by damages recoverable at at law for a breach of covenant, occasions a frequent application to equity to enforce a specific performance of the agreement. The

jurisdiction is specially conferred by the Gen. Stats. ch. 190 § 1, and rests upon the simple principle that the covenantee or obligee has a moral right to the observance of the contract, to which right the courts of law, whose jurisdiction does not extend beyond damages, have not the means of giving effect.   Platt on Covenants *556 ; Hilliard on Vendors 450 :  *Viele* v. *Troy & Boston R. R. Co.*, 21 Barb. 389.

It is objected by the defendant that no consideration for the alleged agreement is stated in the bill or shown by the evidence.

It is true that a court of equity will not enforce a contract that is not shown to be founded on a valuable consideration.  1 Adams' Eq. *78 ; but it is not essential that the consideration, if sufficiently shown by the evidence, appear upon the face of the instrument ;  for upon sufficient cause shown the court will decree specific performance of a *parol* contract for the sale of land, in case where the party does not, by plea or answer, interpose the statute of frauds.   *Newton* v. *Swasey*, 8 N. H. 9 ;  *Tilton* v. *Tilton*, before cited ;  *Kidder* v. *Barr*, 35 N. H. 235 ;  *Chilliner* v. *Chilliner*, before cited.

The evidence abundantly shows a valuable and sufficient consideration for the defendant's agreement to convey the property.   It consists in the agreement of Russ to purchase the property at the price of $1200, and the payment of one-half of the agreed price prior to the execution of the bond.   We are satisfied, from all the evidence, that whether or not the original understanding may have been that the sale should be for cash, that arrangement, if it existed was abandoned when the bond was given, and that the bond was accepted by the plaintiff Russ, at the special request of the defendant, who preferred that method of consummating the trade, rather than the interchange of deed and mortgage, which the plaintiff desired and proposed.   The consideration, then, for the defendant's agreement, contained in the condition of the bond, was the plaintiffs' agreement to purchase and the part payment of the purchase money.

The defendant contends that the bond is not in itself an agreement, nor contains evidence of an agreement *absolutely* to convey the land, because it is at the defendant's option to forfeit the condition and pay the penal sum fixed by the bond, or to convey the land on performance of the conditions precedent on the part of Russ to be performed ; that there is not, therefore, in the bond or condition or in both together contained, any contract or agreement of the defendant to convey the land to Russ.

Precisely this objection was urged by the defendant, to a bill for the execution of a marriage-agreement by conveyance of lands, pursuant thereto, in *Chilliner* v. *Chilliner*, 2 Ves. Sen. 528.   In that case the two fathers of parties contracting marriage, agreed to settle lands.   One of them did so ; but the other, not doing so at the same time, gave his bond of £600, with a penalty of £1200, if he did not.   It was held that the defendant had not an election to forfeit the £600, or settle, the settlement being the primary agreement ; and the £600, only a penalty or further security ; and the Lord

Chancellor Hardwicke said : " Suppose this agreement which is contained in the condition of the bond, (which is a common, but inaccurate way of making marriage agreements ; and this is inaccurately expressed, although the intent of the parties appear,) had been iu articles, instead of the condition of a bond, and an express direction, in the same words as it is here, that the husband and his father covenanted to settle these lands in such a time, or in default thereof that then they shall pay £600 ; suppose all this had been in the articles ; the construction the court would have made, would not be, that this gave an election to the husband or his father to settle the lands or pay £600, certainly not ; but the court would without hesitation say, that this was an agreement to settle the lands ; and that the payment of £600 was only a penalty, if they did not settle in a certain time, and nothing else. If this would be so, then there is no ground to make a different construction, when this is contained in the condition of the bond."

And in an earlier, similar case, where the same objection was made, the Lord Chancellor, Macclesfield, said : " It can be no argument to say that the defendant ought only to pay the penalty of £5000, because the agreement is recited in the bond ; and such agreement was not to be the weaker but the stronger for the penalty." *Hobson* v. *Trevor*, 2 P. Wms. 191. And Shaw, C. J., in *Dooley* v. *Watson*, 1 Gray 414, says : " Courts of equity have long since overruled the doctrine that a bond for the payment of money conditioned to be void on the conveyance of land, is to be treated as a mere agreement to pay money. When the penalty appears to be intended merely as a security for the performance of the agreement, the principal object of the parties will be carried out :" And see Hilliard on Vendors 435 ; *Ensign* v. *Kellogg*, 4 Pick. 1 ; *Hall* v. *Sturdivant*, 46 Maine 34.

We are, therefore, of the opinion the bond and its condition being in equity a valid agreement and being founded upon a valuable and sufficient consideration, is also, independent of the parol testimony in the case, (which, however, leads to the same result,) evidence of a mutual and reciprocal agreement—an agreement by the one party to purchase and by the other to sell. The tie is reciprocal ; the obligation of the plaintiff to pay the balance of the agreed price being capable in law of enforcement, as well as that of the defendant, in equity, to convey—the difference of security by bond for the ultimate performance by one party only, (not more advantageous certainly to the plaintiff than that afforded the defendant by the payment of one-half the price of the land,) not affecting the legal or equitable rights of the parties. We understand that the obligation is mutual where both parties are required by the agreement to do something ; the agreement of the one being a consideration for that of the other ; that it makes no difference in this respect whether the obligation of the one is secured by bond and that of the other not thus secured, nor that when the cause comes or for hearing, the plaintiff's part of the agreement has not actually

been performed, if its fulfillment is tendered, and can be secured by the same decree which compels specific performance by the defendant; and especially if the defendant has sustained no damage, or none which cannot be compensated by the decree.

In such case the agreement sought to be enforced will be regarded as mutual and the tie reciprocal. This proposition is but the converse of that stated by the defendant in argument, in support of which he relies upon the authority of Adams' Equity *82 and numerous cases cited in the note. And see *Gazley* v. *Price*, 16 Johns. 267; *Cooper* v. *Penna*, 21 Cal. 403.

The contract, being in writing, is not within the statute of frauds, and therefore it becomes unnecessary to consider the evidence of part performance, relied upon by the plaintiffs to take it out of the statute.

If it were essential, however, to pass upon this matter, we should not hesitate to find that the continued possession of the premises by Russ for several months after the expiration of his lease, and before the date of the bond, without any demand upon him at any time for the payment of rent, and the improvements made by him subsequent to the date of the bond, with the defendant's knowledge, and without his objection or warning that they were being made at the plaintiffs' peril of. ultimate forfeiture, constituted such a part performance of the contract as to take it out of the statute; See 3 Washb. Real Prop. *553; *Parkhurst* v. *Van Cortland*, 14 Johns. 15; *Newton* v. *Swasey*, 8 N. H. 13; *Hawkins* v. *Holmes*, 1 P. Wms. 771; *Earl of Aylesford's* case, 2 Strange 783; 1 Madd Ch. *303.

The possession and improvements by the plaintiff, under the circumstances, amounted to such acts as, if not considered part performance, would operate as a fraud upon him, unless the whole contract were executed. *Ex parte Storer*, Davies 294; *Ayers* v. *Hawkes*, 11 N. H. 154; *Kidder* v. *Barr*, 35 N. H. 235.

These considerations apply also very forcibly to the objection of the 'defendant; hereafter to. be considered, that the plaintiffs are not entitled to relief because Russ did not perform his part of the agreement within the stipulated time. "Under such circumstances," says Judge Story in *Taylor* v. *Longworth*, 14 Pet. 176, "where there had been a *part* performance and large expenditures on one side, under the contract, and acquiesence on the other side, it would be incompatible with established doctrines to hold that one party could at his own election, by a suit at law put an end to the contract. It could be rescinded by Taylor, only by the decree of a court of equity, which decree would, of course, require full equity to be done to the other party under all the circumstances."

But the defendant insists that the plaintiffs are not entitled to relief, because Russ has not performed the condition precedent to a right to claim a conveyance of the property, by payment *within the year*, of the balance of the price. He contends that time was of the essence of the contract; and that he has not extended the time, nor waived his right to insist upon a literal performance by Russ of the conditions precedent to a conveyance.

I think it may be safely said that, *in general*, equity will not regard time as of the essence of a contract for the sale of lands.

Lord Thurlow in *Williams* v. *Bonham*, cited in 1 Sugd. on Vend. 303, where the contract was that if the title should not be made out in three years the agreement should be void, held that the time fixed was merely formal, and not of the essence of the contract; and he went so far as to indicate the opinion that equity would not allow parties to stipulate that time should be of the essence of the agreement. In this, however, he is not sustained by the decisions of other English Chancellors.

Lord Loughborough, in *Lloyd* v. *Collet*, 4 Bro. C. C. 469, said: "There is nothing of more importance than that the ordinary contracts between man and man should be certain and fixed, and that it should be certainly known when a man is bound and when he is not." But while he insists that parties to a contract may, by clear and express stipulations, provide that unless the agreement be performed within a fixed time, the party not in default may rescind it; he also says that it cannot be true that time is so essential that in no case in which the day has by any means been suffered to elapse, the court would relieve against it and decree performance. "The conduct of the parties, inevitable accident, &c., might induce the court to relieve."

In *Parkin* v. *Thorold*, 16 Beav. 65, Sir John Romilly, M. R., is reported as saying: "Although the doctrine of Lord Thurlow, that time could not be made the essence of the contract in equity, has long been exploded, yet time is held to be of the essence of a contract in equity only in cases of direct stipulation or of necessary implication. The cases of direct stipulation are, when the parties introduce a clause expressly stating that time is to be of the essence of the contract. The implication is derived from the circumstances of the case, such as where the property is required for some immediate purpose, such as trade or manufacture." See *Longworth* v. *Taylor*, before cited; Sugden on Vend. 305; Fry on Specific Performance of Contracts, §§ 711—713.

If it be conscientious that the agreement should be performed, though the action may be lost at law by the default of the very party seeking a specific performance, it will notwithstanding be decreed. *Viele* v. *Troy & Boston Railroad*, before cited; *Barnard* v. *Lee*, 97 Mass. 92; *Pennock* v. *Ela*, 41 N. H. 191.

But courts of equity do have regard to time so far as it respects the good faith and diligence of the parties. If circumstances of a reasonable nature have disabled the party from a strict compliance, or if he comes, *recenti facto*, to ask for a specific performance, his suit is treated with indulgence and, generally, with favor.

But in such cases, even, it should be clear that the remedies are mutual; that there has been no change of circumstances affecting the character or justice of the contract; that compensation for the delay can be fully and beneficially given; that he who asks for a specific performance is in a condition to perform his own part of the contract,

and that he has shown himself ready, desirous, prompt and eager to perform it.   2 Story's Eq. Jur. § 776.

The parties in the present case have indicated by the terms of the condition of the bond, an expectation that the balance of the purchase money should be paid within one year, though the peculiar phraseology employed, might seem to qualify the degree of certainty intended or contemplated in that respect, the condition being thus expressed : " If said Gordon upon the payment of six hundred dollars and interest *yearly* by said Russ, within one year."

But although such period of time is thus expressed, it is not apparent that circumstances of a reasonable nature have not disabled the party from a strict compliance.   The purchaser seems to have been desirous to fulfil his part of the condition.   Having paid six hundred dollars of the purchase money, and expended some hundreds of dollars in permanent improvements upon the land, and no essential change in the value of the property, other than its increased worth, by reason of the improvements made at his expense, it is manifest that nothing but pecuniary embarrassments, abundantly disclosed, prevented a strict compliance with the contract on the part of the vendee.   There has been no change of circumstances affecting the character or justice of the contract; compensation for the delay has been tendered by the original purchaser's assignee, and is now offered in court ; the vendee has shown himself desirous and eager, if not prompt and ready, to perform his part of the contract; and under these circumstances, to require of the one plaintiff a total sacrifice of the large sums expended in part performance of his agreement, and of the other plaintiff the sum of eight hundred dollars, paid by him as a consideration for the assignment, would be a subversion of equity to the ends of an unwarrantable oppression and wrong.

But in view of all the evidence, as we are impressed by it, it is not essentially material whether time was originally regarded by the parties as an important element of the contract or not.   The defendant, not only by his conduct, if not in express terms, (and we think an express agreement to that effect is sufficiently shown), has waived the objection now taken, by extending indefinitly (if he had the power to do so) the time for the performance of the plaintiff's condition.   The evidence is quite clear that at various times during the summer and fall, after the year expired on the 21st day of May, 1867, the defendant desired and requested the plaintiff Russ, to pay the money due, according to the original stipulation.   Instead of doing this, he should have informed Russ that he considered himself absolved from his obligation to convey ; and his omission to do this is very strong evidence that he regarded the original agreement as still in force. *Barnard* v. *Lee*, 97 Mass. 95.   This would leave the condition to be performed within a *reasonable* time ; and we regard the tender of performance by Ewins on the 29th of May, 1868, about a year after the expiration of the time originally stipulated for, (no circumstances prejudicial to the defendant's interests during the effluxion of time

being indicated,) as a tender of performance within a *reasonable* time, and therefore as sufficiently prompt and ready. *Mason* v. *Wallace*, 3 McLean 148.

Many cases are cited by Mr. Hilliard in his work on Vendors, page 191 and notes, in which courts of equity have exercised a discretion to relieve against the lapse of time expressly fixed by the parties. Thus where an agreement for the sale of land was suffered to remain unexecuted for fourteen years, the vendee having continued in possession, the court, under the circumstances of the case, decreed a specific performance of the contract. *Waters* v. *Travis*, 9 Johns. 450.

In the present case, it is observed that the defendant made no effort to regain possession until *after* the tender of the balance of the purchase money, the interest and damages.

*Mason* v. *Wallace*, 3 McLean, 148 was a suit in equity to enforce specific execution of a contract to convey land. It was considered by the court that the delay of payment was unreasonable; nevertheless, the complainant having made large and valuable improvements, with the knowledge and acquiescence of the defendant, who had suffered no damage, which interest would not compensate, specific execution was decreed, upon payment of the agreed price, with interest.

In *Edgarton* v. *Peckham*, 11 Paige 352, the owner of land made a written agreement to sell it for $300, one third to be paid down and the residue in one and two years with interest; possession to be delivered immediately; and if the purchaser should make default in either of the payments, the vender to be discharged and the purchaser to forfeit all previous payments and deliver up possession.

The vendee took possession, made valuable improvements, and paid the first two instalments at the time specified. He then assigned his contract to the complainant, who took possession but did not make the last payment at the day specified.

The defendant did not call upon him for payment, nor offer a conveyance upon payment; but a few days after, the complainant tended the money and demanded a conveyance. It was held that time was not of the essence of the contract, and the complainant was entitled to specific performance.

But, as we have already suggested, if this were a case in which time was originally regarded as an important and essential part of the contract, it may subsequently cease to be regarded as essential, and this change arises from and is evinced by the subsequent conduct of the parties. And a waiver of the express stipulations of the conditions precedent to a conveyance may be inferred where the party has assented and acquiesced in delay, Hilliard on vendors, 197.

Though time were regarded as essential, there can be no doubt that the party having the right to insist upon it, may by express agreement extend the time.

It would seem that such extension of time may be by parol, although the original agreement was in writing; especially since, as we have seen, the writing is not essential, in equity, to the validity

and enforcement, of the original agreement. 4 Cow. Phil. Ev. 605, 606, Notes Part, 2 n. 298 ; *McMurphy* v. *Garland,* 47 N. H. 322 ; Hilliard on Vendors 199 and cases cited in note 5 ; *Mill Dam Foundry* v. *Hovey,* 21 Pick. 417.

However this may be, without reference to any express or implied agreement to extend the time, we are of the opinion that the jurisdiction of the court in the premises is restricted by no narrower rule than is contained in the broad proposition, that, whenever in any particular instance it is just and reasonable, under the circumstances, that performance of a contract within a stipulated time should not be insisted upon, relief against the lapse of time may be granted, in the discretion of the court.

Whether the circumstances call for the exercise of such discretion is a question of fact and of law, to be determined by the court upon careful consideration of the evidence.

Hilliard on vendors 180 ; *Pickering* v. *Pickering,* 38 N. H. 407 ; *Laverty* v. *Hall,* 19 Iowa 526 ; *Radcliffe* v. *Warranton,* 12 Ves. Jr. 326 ; *Myers* v. *Watson,* 7 Eng., L. & Eq. 66 ; *Barnard* v. *Lee,* before cited.

This subject is very fully treated in the elaborate and exceedingly luminous opinion of Lord Eldon in *Seton* v. *Slade,* 7 Ves. Jr. 272–279.

And in *Hearne* v. *Tenant,* 13 Ves. Jr. 289 ; Lord Erskine says that " the principle upon which the court acts is now, upon all the authorities, brought to the true standard ; that though the party has not a title in law, as he has not complied with the terms, so as to entitle him to an action, as to the time, for instance, yet, if the time, though introduced, as some time must be fixed, where something is to be done on one side, (as a consideration for something to be done on the other,) is not of the essence of the contract, a material object, to which they looked in the first conception of it, even though the lapse of time has not arisen from accident, a court of equity will compel the execution of the contract ; upon this ground, that the one party is ready to perform, and the other may have a performance, in substance, if he will permit it."

And the doctrine upon which these decisions are based is fully recognized by the supreme court of the United States in repeated instances, *Hepburn* v. *Dunlop,* 1 Wheat. 196 ; *Taylor* v. *Longworth,* 14 Pet. 172 ; *Braizer* v. *Gratz,* 6 Wheat. 533 ; and see *Schroeppel* v. *Hopper,* 40 Barb. 425 ; *Williston* v. *Williston,* 41 Barb. 635 ; *Richmond* v. *Robinson,* 12 Mich. 193.

The bill alleges an assignment of the defendant's agreement, and the proof shows that the assignment was in writing under the hand and seal of the assignor. It purports to convey all the assignors interest in the covenants and agreements contained in the original instrument.

We are satisfied that it was executed in good faith and for the actual consideration of eight hundred dollars therein expressed, and that the same was paid without reservation by the assignee. But the

question of the validity of the assignment on account of the consideration, is not open to this defendant.   It is a matter that can be enquired of only by the creditors of the plaintiffs.   *Ensign* v. *Kellogg*, 4 Pick. 5.

We are of the opinion that the assignment is sufficiently set out in the bill, and that it is not requisite for the application of proof by the production of the instrument and evidence of its execution, that it should be *declared upon* as an instrument under the hand and seal of the assignor.

And although made antecedent to the parol extension by the defendant of the time of payment under the original agreement, yet since it purports and was intended to convey all the assignors rights and interests under that agreement, it equally applies to the agreement when subsequently extended and continued in force beyond the period of time originally contemplated.

The contract was properly assignable.   The counsel for the defendant suggests in argument that the defendant may have been willing to pay or convey to Russ, but not to Ewins or any one else ; but no reason for this preference is intimated in the argument or in the evidence, nor has the defendant in his dealings with either of the plaintiffs given any warrant for such an intimation.   Courts of equity act in favor of all person claiming by assignment under the parties, independent of that privity of contract generally indispensable at law.   2 Story's Eq. Jur. § § 783, 1040, 1057, 1057 a.

Notice of the assignment, though not immediately given was not withholden, to the defendant's detriment.   The defendant says that he was not aware of the assignment, certainly, though he had heard rumors of it.   However, this may be, it is certain that he never made objection to the execution of the deed tendered him for that purpose by Ewins, *by reason of the assignment*, but for the reason, as he expresses it, that he thought it was time to take the property into his own hands, as he had waited long enough ; or, as Ewins expresses it, because, he said, he had " made up his mind not to take the money."

The tender was unconditional and sufficient.   The defendant made no objection to the form of manner nor to the amount of it, nor to the form of the deed, but refused solely upon the ground that he had concluded not to convey the land.   *Buffum* v. *Buffum*, 11 N. H. 456 ; 1 Selw. N. P. 158, 159 ; 2 Greenl. Ev. §§ 601–605.

And we are of the opinion that after tender and refusal, the plaintiffs are not required, in order to entitle themselves to equitable relief, to allege in their bill that they have always been ready to pay the money, if that fact is established by the evidence and a profert of the money is made in court, as in the case before us.   *Buffum* v. *Buffum*, 11 N. H. 459,   The evidence of readiness to pay, accompanied by profert, made by the terms of the bill, is sufficient. *Perry* v. *Carr*, 41 N. H. 371.

The default of Russ with regard to the payment of taxes and premiums for insurance is cured by the tender of a sum sufficient to

compensate the defendant for all his damages, for reimbursement for the amount of premiums paid and of taxes paid, whether legally assessed or not, and for interest on the balance due of the purchase money and the other disbursements of the defendant.

The defendant objects to the joinder of the parties plaintiffs, without suggesting the grounds of his objection, and we are unable to discover them.

On the contrary, whether it were indispensible that the assignor should be joined or not, in a case where the court have broad jurisdiction to require of the parties seeking relief effectual compliance with the terms and conditions, upon the performance of which alone, the relief will be granted, it is eminently proper that all the parties should be before the court, to receive and do what may be required of each. Story's Eq. Pl. §§ 153, 154. 1 Dan'l Ch. Pl. & Pr. 250, 251; *Cathcart* v. *Lewis*, 1 Ves. Jr. 463; *Ray* v. *Fenwick*, 3 Bro. C. C. 25.

The granting of a specific performance of a contract, for the sale of land, said Mr. Justice Sargent in *Eastman* v. *Plumer*, 46 N. H. 478, "is not a matter of right, to which the party is entitled when he has proved his contract, but is always a matter of sound and reasonable discretion on the part of the court, in the exercise of which discretion it grants or witholds relief, according to the circumstances of each particular case." It will be denied where the granting of the prayer would be inequitable.

But in the case before us we are clearly of the opinion that denial of the plaintiffs' reasonable claim would be inequitable and unjust.